NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

SUKETU NANAVANTI, M.D.,

    Plaintiff,

        v.

CAPE REGIONAL MEDICAL CENTER,
et al.,

    Defendants.

Civil No. 12-3469 (RMB/KMW)

**OPINION**

APPEARANCES:

Demetrius J. Parrish, Esq.
1613 Spruce Street
Philadelphia, PA  19103
    Attorney for Plaintiff

William M. Honan, Esq.
Sarah Beth Johnson
Fox Rothschild LLP
Midtown Building
1301 Atlantic Avenue
Atlantic City, NJ  08401
    Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court on an Order to show

cause why the Court should not impose sanctions on Plaintiff's

counsel, Demetrius J. Parrish and Adrian J. Moody, pursuant to

Federal Rule of Civil Procedure 11 or the Court's inherent

authority, for their conduct in connection with the filing of a

motion to vacate dismissal of this action (the "Motion") (Dkt.

1

Ent. 17). In conjunction with this Order, Defendants have filed

an application for attorneys' costs and fees incurred in defense

of the Motion. (Dkt. Ent. 30.) After consideration of the papers

submitted as well as counsel's statements during the hearing,

the Court hereby imposes sanctions upon Mr. Parrish pursuant to

Rule 11 or, in the alternative, the Court's inherent authority.[1]

Because of the pervasive nature of the misconduct, the Court

finds that an award of reasonable attorneys' fees is warranted.

## I.   BACKGROUND

On June 8, 2012, attorney Parrish filed this employment

action against the defendants (the "Defendants") on behalf of

his client, Plaintiff Suketu Nanavanti, M.D. ("Plaintiff").

(Compl., Dkt. Ent. 1.) Then, on July 12, 2012, Mr. Parrish filed

on behalf of Mr. Moody a motion for leave to appear pro hac

vice. (Dkt. Ent. 3.) United States Magistrate Judge Karen

Williams entered an Order on October 22, 2012 denying this

motion without prejudice for failure to file the required notice

---

[1] During the April 16, 2013 hearing on the issue of sanctions, the
Court indicated its intention to revoke Mr. Moody's pro hac vice
admission due to his participation in the misconduct. Mr. Moody then
voluntarily withdrew his pro hac vice appearance in anticipation of
the Court's decision. (Dkt. Ent. 27.) The Court finds that any further
discipline is better left to the authorities in the jurisdictions
where he is admitted. See Chambers v. Heidelberg, USA, Inc., No. 04-
853, 2007 WL 1544255, at *3 (D.N.J. 2007) ("Finally, this Court notes
that whether Frelix is subject to further professional discipline is a
matter best left to the authorities in jurisdictions where Frelix is
admitted." (citing Eagan v. Jackson, 855 F. Supp. 765 (E.D. Pa.1994)).
The Court will, therefore, forward a copy of this Opinion to the Chief
Judge pursuant to Local Civil Rule 104.1(e)(2) for consideration.

of motion. (Dkt. Ent. 13.) On November 14, Mr. Parrish filed a corrected pro hac vice motion for Mr. Moody (Dkt. Ent. 19), which Judge Williams granted on November 20 (Dkt. Ent. 21).

In the meantime, prior to the expiration of Defendants' time to respond to the complaint (the "Complaint"), defense counsel, Sarah Beth Johnson, entered an appearance and sought an extension of time under Local Civil Rule 6.1(b). (Dkt. Ents. 5, 6.) This application was granted, and the answer due date set for September 18.

On that day, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Ent. 8.) Notice of this filing was electronically-mailed to defense counsel, as well as Plaintiff's local counsel, Mr. Parrish. The motion to dismiss was set for October 15, and Plaintiff's opposition was therefore due on October 1. (See Sept. 18, 2012 Dkt. Ent.) Mr. Parrish also received electronic notification of these dates.

Apparently, on October 19, Mr. Moody mailed a letter to this Court, advising it that he had learned of Defendants' motion to dismiss and had sought an extension from Ms. Johnson only to discover that Plaintiff's response date had already passed. (Dkt. Ent. 23.) He, therefore, requested the Court grant Plaintiff an extension to November 15 to respond to Defendants'

motion. (Id.) The Court did not receive Mr. Moody's letter until October 24.

On October 23, eight days after the motion day for Defendants' motion to dismiss had passed, Ms. Johnson electronically-filed a letter opposing Plaintiff's October 19 request for an extension. (Dkt. Ent. 14.) The Court received a copy of Ms. Johnson's letter on October 24.

Also on October 23, the scheduled return date, the Court, unaware of Ms. Johnson's letter, entered an order granting Defendants' motion to dismiss without prejudice as unopposed. (Dkt. Ent. 16.) Notice of the Court's Order was immediately electronically-mailed to defense counsel as well as Mr. Parrish.[2]

On November 7, Mr. Parrish filed a Motion to vacate the Court's October 23 Order of dismissal pursuant to Federal Rule of Civil Procedure 60. (Dkt. Ent. 17.) After the Court spent considerable time peeling back the false layers of the motion, it became evident that the Motion and the accompanying memorandum of law contained numerous misstatements and/or mischaracterizations, as follows:

- "On September 18, 2012, when their Answer was due, the Defendants filed a Motion to Dismiss the Plaintiff's Complaint in Lieu of an Answer, which the Court granted the following day and directed that the Plaintiff Respond

---

[2] What appears to have happened is that, at the time the Court entered the dismissal Order, but before it was docketed, Ms. Johnson electronically filed her letter. The Court only became aware of Ms. Johnson's letter the next day, after the matter was dismissed.

[sic] by October 1, 2012. (Please see Exhibit 'A' [the docket])." (Mot. ¶ 13.) [This was false as the Court did not grant the motion to dismiss until October 23, 2012.]

- "However, because of Staffing difficulties, Attorney Moody asked for extensions of time within which to file a response, first until October 25, 2012, and finally until Monday November 5, 2012. (See Exhibit 'D' [Pl.'s Oct. 19 letter])." (Id. ¶ 15.) [This was false. Plaintiff requested only one extension to November 15, which the Court did not grant as it had already dismissed the case.]

- "On October 23, 2012, Counsel for the Defendants communicated with the Court by way of letter asking that the Plaintiff's case be dismissed. (Please see Exhibit 'E')." (Id. ¶ 16.) [This mischaracterizes Defendants' letter, which simply opposed Plaintiff's request for an extension to submit his opposition to the motion to dismiss.]

- "On October 23, 2012, and before the Plaintiff had any meaningful opportunity to consider the letter and respond to it, the Court granted the Defendants' request that same day, and dismissed the Plaintiff's Complaint that same date. (Please see Exhibit 'A')." (Id. ¶ 18.) [This mischaracterize Defendants' letter and the record. The motion to dismiss was filed on September 18, 2012 and the Court granted it on October 23 – eight days after it had become ripe for decision.]

- "Neither Attorney Moody nor Mr. Parrish received a copy or were noticed on the Court's October 22, 2012 order Denying Mr. Moody's Motion appear Pro Hac Vice, and Mr. Parrish was unaware that a copy of the October 23, 2012 letter Motion Dismiss had been sent him or granted that date." (Id. ¶ 19.) [This is false as Mr. Parrish received electronic notification of these filings.]

- "However, where Attorney Moody was in communication with the Court after October 22-23, 2012 to request extensions of time within which to file a response, neither he nor Mr. Parrish knew either that Mr. Moody had been denied permission to appear Pro Hac Vice or that the case had been dismissed." (Id. ¶ 20.) [This is false as not only did Mr. Parrish receive electronic notification of these filings but also the Court did not receive Plaintiff's October 19 letter requesting an extension until the day after it had granted the motion to dismiss.]

- "Indeed, on or about October 25, 2012, Mr. Moody requested and was granted until October 31, 2012 to file the response, and then further granted until Monday November 5, 2012 to file the response." (Id. ¶ 21.) [This is false. In his October 19 letter, Plaintiff sought only one extension to November 15, which the Court did not grant because it had already dismissed the case.]

- "At no time was [Mr. Moody] ever informed that he had been denied an appearance Pro Hac Vice or the case had earlier been dismissed." (Id. ¶ 22.) [Mr. Parrish received electronic notification of these filings and, as local counsel, it was his responsibility to inform Mr. Moody.]

- "For reasons unknown to either Mr. Moody or Mr. Parrish, the granting of said requests or extensions are not reflected in the docket entries." (Id. ¶ 23.) [Plaintiff requested only one extension, which the Court did not grant because the case had already been dismissed.]

- "Furthermore, where the Defendants filed their letter Motion to Dismiss on October 23, 2012, and even if Plaintiff's counsel had been given timely notice or a copy of the letter, counsel would have been denied an opportunity to respond timely thereto where the Court granted that Motion the same day." (Id. ¶ 24.) [This is false and misleading. Defendants' letter merely opposed Plaintiff's request for an extension; the motion to dismiss was ripe when the Court granted it; and Mr. Parrish received electronic notification of all filings.]

- "Having been given extensions of time by which to file a Response to the Defendants' Motion to Dismiss in Lieu of an Answer, counsel for the Plaintiffs steadily worked on that response and sought to file it on Monday, November 5, 2012 (i.e. yesterday)." (Id. ¶ 26.) [This is false as the Court never granted any extensions.]

- "At no time prior to October 23, 2012 was either of Plaintiff's counsel timely noticed that a letter motion had been filed on October 23, 2012 or that the case had been terminated that date." (Id. ¶ 30.) [This is false and mischaracterizes the record. Defendants' request was not a letter motion, and Mr. Parrish received electronic notification of all filings.]

Thereafter, this Court issued an Order instructing Messrs.

Parrish and Moody to attend oral argument and be prepared to

discuss the misstatements contained within the Motion. (Dkt. Ent. 22.) The Order further directed all counsel to be prepared to discuss whether sanctions may be warranted for counsel's conduct. (Id.) During the April 16, 2013 hearing, Messrs. Parrish and Moody admitted to making several misstatements in the Motion and consequently misleading the Court. The Court subsequently dismissed the Motion without prejudice, and ordered Plaintiff's counsel to advise the Court why it should not (a) sanction counsel pursuant to Rule 11(c) or the Court's inherent power; (b) withdraw Mr. Moody's permission to appear pro hac vice; and/or (c) require Plaintiff's counsel to pay Defendants' attorneys' fees and costs associated with the Motion. (Dkt. Ent. 24.)

Upon receipt of this Order, Mr. Parrish submitted a letter to the Court apologizing for the "inaccurate and misleading" content of the Motion, and taking full responsibility for the errors (Dkt. Ent. 26), while Mr. Moody voluntarily withdrew his appearance (Dkt. Ent. 27). On May 9, 2013, Ms. Johnson submitted an application for attorneys' fees in the amount of $3,408 (see Dkt. Ents. 29, 30), which Mr. Parrish opposed (Dkt. Ent. 32).

## II. DISCUSSION

### A. Rule 11 Sanctions

Federal Rule of Civil Procedure 11 is intended to redress abusive litigation practices, and recognizes that a person

signing and submitting a document to the court has a "nondelegable responsibility to the court." Fed. R. Civ. P. 11, advisory committee's note. <u>See generally</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990). Under Rule 11(b),

> [b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Should the Court determine, after notice and an opportunity to respond, that an attorney has violated Rule 11(b), it has the authority to impose an "appropriate sanction." Fed. R. Civ. P. 11(c)(1). The sanction may include "nonmonetary directives . . . or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(1), (4).

In evaluating an attorney's conduct, "a court must apply an objective standard of 'reasonableness under the circumstances.'" <u>In re Cendant Corp. Deriv. Action Litig.</u>, 96 F.Supp.2d 403, 405 (D.N.J. 2000) (quoting <u>Ford Motor Co. v. Summit Motor Prods. Inc.</u>, 930 F.2d 277, 289 (3d Cir. 1991)). "Thus, this Court must

determine whether a competent attorney who conducted a reasonable investigation into the facts and law pertinent to the case would have determined that the allegations presented against defendants were well grounded in law and fact." Watson v. City of Salem, 934 F. Supp. 643, 663 (D.N.J. 1995). Furthermore, the court assesses reasonableness as of the time the motion was submitted to the court. New Life Homecare, Inc. v. Blue Cross of Ne. Pa., No. 06-2485, 2008 WL 534472, at *2 (M.D. Pa. Feb. 20, 2008). Sanctions may be imposed in the absence of subjective bad faith on the part of the attorney, and Rule 11 "does not recognize a 'pure heart and empty head' defense." In re Cendant Corp., 96 F. Supp. 2d at 405 (citations omitted).

As discussed below, Plaintiff's Motion and accompanying memorandum, which were signed and electronically-filed by Mr. Parrish, contained numerous misstatements and/or mischaracterizations that were not only objectively unreasonable but also blatantly false at the time that they were made.

### 1. Misstatements Regarding Plaintiff's Requests for Extensions

Plaintiff falsely claims that Mr. Moody requested, and was granted, several extensions of time to file his response to Defendants' motion to dismiss. Specifically, the Motion provides: "Attorney Moody asked for extensions of time within

which to file a response, first until October 25, 2012, and finally until Monday November 5, 2012." (Mot. ¶ 15.) In addition, "Attorney Moody was in communication with the Court after October 22-23, 2012 to request extensions of time within which to file a response," and "on or about October 25, 2012, Mr. Moody requested and was granted until October 31, 2012 to file the response, and then further granted until Monday November 5, 2012 to file the response." (Id. ¶¶ 20, 21; see also id. ¶ 26.)

The only evidence that counsel cites in support of these statements concerning the extensions purportedly sought and obtained is Plaintiff's October 19 letter to the Court in which he sought a single extension to November 15 (and not October 25 or 31, or November 5 as the Motion contends). When confronted with this fact during the hearing, Mr. Parrish acknowledged that November 5 was a misstatement and should have read November 15 as set forth in Plaintiff's letter.[3] But that does not address the fact that Plaintiff suggested to the Court that he had requested multiple extensions from the Court. Aside from this letter, however, Plaintiff's counsel sought no other extensions from the Court during this time period.

---

[3] Notably, Plaintiff failed to electronically file the letter and, therefore, the Court did not receive it until October 24—after it had granted the motion to dismiss as unopposed.

The Court is most disturbed by counsel's implication that
the Court **granted** Mr. Moody's requests. The Court never granted
any such requests for extensions and, indeed, would not have
done so "on or about October 25, 2012" because the Court had
already granted Defendants' motion to dismiss on October 23.
Plaintiff submitted no evidence reflecting these supposed
extensions, and there is no evidence in the record to support
these assertions. Accord L. Civ. R. 7.1(d)(5) (automatic
extensions of time may be sought prior to the expiration of the
due date, but "[n]o other extension of the time limits . . .
shall be permitted without an Order of the Court"); (see also
Dkt. Ent. 20 at 2 ( "[A]t no time between September 18 and
October 17, 2012 did [defense counsel] receive any communication
from Mr. Parrish, Mr. Moody, or the Court reflecting either the
Plaintiff's request(s) for extensions or the Court's granting of
same.")).

At the hearing, Mr. Moody suggested that these statements
in the Motion referred to his telephone conversations with Ms.
Johnson after he learned that Defendants had filed a motion to
dismiss and the Court had dismissed the action. It is unclear
why Mr. Moody believed he could seek extensions from either the
Court or opposing counsel **after** the Court had dismissed the
action. Such conduct is troubling. In any event, Ms. Johnson
claimed to have spoken to Mr. Moody on October 18 at which time

she informed him that she could not consent to any extensions because the deadline for a response had passed. (See also Dkt. Ent. 20 at 2.) Therefore, even if the Motion could be read as stating that Plaintiff's counsel sought extensions from defense counsel—and it cannot—the Motion still falsely asserts that Plaintiff received extensions that were never given.

### 2.  Notification of Filings

Plaintiff's Motion also contains several misstatements concerning receipt or notification of various filings and orders. For example, counsel asserts that "[n]either Attorney Moody nor Mr. Parrish received a copy or were noticed" on Judge William's Order denying Mr. Moody's motion to appear pro hac vice, and that Mr. Parrish did not know that Defendants' October 23 letter had been sent to him. (Id. ¶¶ 19, 20, 22.) Nor were Mr. Parrish and Mr. Moody informed that Defendants had filed a "letter motion" or that the Court had dismissed the case on October 23. (Id. ¶ 30; see also id. ¶ 24.) These statements are completely false.

The court records show the documents—Judge Williams' Order denying Mr. Moody's motion to appear pro hac vice (Dkt. Ent. 13), Defendants' October 23 letter (Dkt. Ent. 14), and the Court's October 23 Order (Dkt. Ent. 16)—were each electronically-filed and notice was sent to Mr. Parrish through the Electronic Case Filing System. Indeed, at the hearing Mr.

Parrish acknowledged receipt (that he earlier denied) but explained that he did not forward the notices to Mr. Moody because he believed Mr. Moody was also receiving them. Nowhere in the Motion did counsel make that assertion. Moreover, it is Mr. Parrish's duty, as local counsel, to inform Mr. Moody when documents are filed on the docket. See L. Civ. R. 101(c)(4) ("[A]n appearance as counsel of record shall be filed promptly by a member of the bar of this Court upon whom all notices, orders and pleadings may be served, and who shall promptly notify his or her specially admitted associate of their receipt.").

### 3. Mischaracterizations of Record

Plaintiff's Motion also mischaracterizes the record. For example, Plaintiff claims that "[o]n September 18, 2012, when their Answer was due, the Defendants filed a Motion to Dismiss the Plaintiff's Complaint in Lieu of an Answer, **which the Court granted the following day** and directed that the Plaintiff Respond [sic] by October 1, 2012." (Mot. ¶ 13 (emphasis added).) The record makes clear, however, that the Court did not grant the motion to dismiss until October 23, eight days after the motion became ripe for decision. (See Dkt. Ent. 16.) Furthermore, had the Court granted the motion to dismiss on September 19, there would have been no need for it to order

Plaintiff to respond by October 1. Mr. Parrish admitted to this misstatement as well during the hearing.

The motion also mischaracterizes Defendants' October 23 letter (Dkt. Ent. 14), describing it as a "letter Motion to Dismiss" or a request "that the Plaintiff's case be dismissed." (Mot. ¶¶ 16, 24; see also id. ¶¶ 18, 19.) Plaintiff's counsel then casts blame on the Court for granting the Defendants' purported request and dismissing the action "before the Plaintiff had any meaningful opportunity to consider [Defendants' October 23] letter and respond to it." (Id. ¶ 18; see also id. ¶ 24 ("Furthermore, where the Defendants filed their letter Motion to Dismiss on October 23, 2012, and even if Plaintiff's counsel had been given timely notice or a copy of the letter, counsel would have been denied an opportunity to respond timely thereto where the Court granted that Motion the same day.").)

Defendants' letter was not a motion to dismiss. Rather, as clearly stated in the first paragraph of the letter, it was merely a "response to the October 19, 2012 letter submitted by Plaintiff's counsel . . . requesting an extension of time to submit an opposition to Defendants' Motion to Dismiss." (Dkt. Ent. 14.) Defendants' motion to dismiss had been filed earlier on September 18, which local counsel knew because he received electronic notification of its filing (as Mr. Parrish conceded

14

only at oral argument), and it was ripe when the Court granted it.

The above discussion demonstrates that, at the time Plaintiff's counsel submitted the Motion to the Court, most of the factual contentions set forth therein were blatantly false, or made up. Yet, Plaintiff's counsel then repeated all of these misstatements and mischaracterizations in the memorandum of law in support of the Motion, and relied upon them as the basis of Plaintiff's argument to vacate dismissal. (See, e.g., Pl.'s Mem., Dkt. Ent. 17 at 1-4, 9, 11 (stating that Plaintiff's counsel acted in good faith and "were working pursuant to court-authorized extensions of time").) Attorneys owe a duty of candor to the tribunal and a duty of fairness to their opposing counsel, which must be strictly respected in order to uphold the integrity of the legal system. Here, Plaintiff's counsel flouted their responsibilities by submitting these baseless documents to the Court and there must be consequences for their misconduct.

Where an attorney has abused the litigation process or misused the judicial system, it is appropriate to impose Rule 11 sanctions on the attorney who signed the document. See Cohen v. Kurtzman, 45 F. Supp. 2d 423, 435 (D.N.J. 1999). Accordingly, because Mr. Parrish signed and submitted to the Court a Motion containing numerous misstatements and mischaracterizations, this Court hereby finds that Mr. Parrish violated Rule 11(b)(3) and

should be sanctioned. Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Assocs., Inc., No. 06-105, 2008 WL 877203, at *7-8 (E.D.N.Y. 2008) ("[T]he Court finds that, by making factual contentions to the Court that are completely unsupported by the evidence, the Plaintiff did indeed violate Rule 11(b)(3) and should be sanctioned accordingly.").

**B. Attorneys' Fees**

Having found that Mr. Parrish's actions violated Rule 11(b)(3), this Court must now address the "appropriate" sanction to impose. The Advisory Committee Notes provide a non-exhaustive list of considerations in determining what sanctions to impose:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants.

Rule 11(c) permits this Court in its discretion to impose monetary sanctions, including an award of attorneys' fees, for violations of Rule 11(b). In deciding whether to award a monetary sanction as well as the amount of the sanction, the Court is guided by equitable considerations. Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir.

1988). Although Rule 11 provides an "exception to the traditional American rule requiring each litigant to bear its own costs and attorneys' fees," <u>Cohen</u>, 45 F. Supp. 2d at 435, the primary purpose is "to deter wrongful attorney conduct," <u>Watson v. City of Salem</u>, 934 F. Supp. 666, 667 (D.N.J. 1996) (citing <u>Cooter & Gell</u>, 496 U.S. at 393).

Here, these factors support an award of attorneys' fees to Defendants. The pervasive nature of the misrepresentations and mischaracterizations reflect complete disregard of counsel's responsibility of candor towards the Court.[4] Counsel used these misstatements and mischaracterizations of the record to mislead the Court into vacating its dismissal. This Motion has unduly prolonged these proceedings and caused the unnecessary waste of party and judicial resources expended in the defense and consideration of Plaintiff's Motion, not to mention the resources expended on the issue of sanctions. Mr. Parrish is an experienced attorney who is admittedly litigating other cases in the District of New Jersey. To ensure that Mr. Parrish is effectively deterred from repeating such misconduct, and to reinforce generally an attorney's obligation to communicate

---

[4] Rule 3.3(a)(1) of the Rules of Professional Conduct provide that "A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal."

truthfully with the court, Defendants' application for an award of reasonable attorneys' fees will be granted.

"The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." Doering, 857 F.2d at 195. Ms. Johnson has submitted a fee application certifying that she spent 14.2 hours at an hourly rate of $240.00 (amounting to $3,408) addressing Plaintiff's Motion and the issue of sanctions. (Dkt. Ent. 30 ¶ 12.) In support of this application, however, Ms. Johnson submitted a fee invoice up to and including April 26, 2013 that detailed only 12.2 hours (totaling $2,928.00) of work. (Id.) She then attested to having completed an additional .5 hours responding to Plaintiff's April 26, 2013 submission and 2.0 hours preparing the fee application. (Id. ¶ 13.) Because this time is not supported by proper documentation the Court will deduct those undocumented hours. See FTC v. Circa Direct LLC, 912 F. Supp. 2d 165, 177 (D.N.J. 2012) (disregarding undocumented hours in calculating attorneys' fees). Ms. Johnson's hourly rate is reasonable in light of her six years of experience as an attorney, as well as her significant experience litigating employment matters (see id. ¶¶ 3-6). See FTC v. Circa Direct LLC, 912 F. Supp. 2d 165, 174-75 (D.N.J. 2012) (finding hourly rate of $275 warranted and

reasonable for associates with four years of experience).
Accordingly, the lodestar amount is $2,928.00 (12.2 hours at
$240/hour).

Mr. Parrish opposed Defendants' fee application, asserting
that 14.2 hours to defend the Motion was "exorbitant in light of
the directness of the facts involved." (Dkt. Ent. 32.) "In
objecting to a fee application, a party 'cannot merely allege in
general terms that the time spent was excessive.' Rather, the
party must 'generally identify the type of work being
challenged, and second, they must specifically state the adverse
party's grounds for contending that the hours claimed in that
area are unreasonable.'" FTC, 912 F. Supp. 2d at 175 (citing
Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d
Cir. 1989)).

In reviewing the entries, it appears that Ms. Johnson spent
approximately one hour reviewing and analyzing the Motion (Dkt.
Ent. 30 (entries for Nov. 7 and 9, 2012)), and four hours
drafting a response (id. (entries for Nov. 18 and 19, 2012)).
She then spent approximately 4.9 hours preparing for and
attending the April 16, 2013 hearing on the Motion. (Id.
(entries for April 15 and 16, 2013).)

The Court does not find these hours to be excessive.
Plaintiff's lengthy Motion included numerous misrepresentations
and misstatements that required an unusual amount of time to

untangle fact from fiction before a response to Plaintiff's legal argument could even be drafted. The time Ms. Johnson spent drafting her six-page, single-space letter response does not seem unreasonable in light of the legal and factual arguments set forth therein. Furthermore, because of Plaintiff's misconduct, Ms. Johnson was forced to prepare for the April hearing on the Motion months after it had been filed, and then travel to Camden from her offices in Atlantic City in order to attend the nearly hour-long hearing. It should be noted that Defendants' fee application accounts only for Ms. Johnson's time, although Defendants are also represented by a partner at Ms. Johnson's firm who attended the hearing with her.

The remainder of the time set forth in the fee application (2.3 hours) consists generally of communications between and among Ms. Johnson, her client, co-counsel, the Court, and opposing counsel. (See id.) The Court will reduce this time by one hour, which discounts a sufficiently reasonable amount of time spent in communication with the client about general litigation strategy and not the matters at hand. This reduces the fees to $2,688.00, which the Court finds are entirely reasonable.

The Court has taken into account certain mitigating factors such as Mr. Parrish's status as a solo practitioner, and the fact that Mr. Moody significantly contributed to the offending

motion. See DiPaolo v. Moran, 407 F.3d 140, 145 (3d Cir. 2005)
("Moreover, we have encouraged district courts to 'consider
mitigating factors in fashioning sanctions, most particularly
the sanctioned party's ability to pay.'" (citing Zuk v. E. Pa.
Psychiatric Inst. of the Medical College of Pa., 103 F.3d 294,
301 (3d Cir. 1996))). In his objection to Defendants' fee
application, Mr. Parrish did not offer any evidence
demonstrating an inability to pay any monetary sanctions but
stated only that "if the Court is inclined to levy monetary
sanctions against me, as a solo practitioner, I respectfully
request that a reasonable sanction be considered." (Dkt. Ent.
32.) Thus, it appears that Mr. Parrish is able to pay the
sanction.

## C. The Court's Inherent Authority to Sanction

Although Rule 11 provides a sufficient basis for the
imposition of sanctions against Mr. Parrish for his misconduct,
the Court's inherent authority provides an alternative basis for
imposing sanctions. See In re Prudential Ins. Co. Am. Sales
Practice Litig. Agent Actions, 278 F.3d 175, 188-89 (3d Cir.
2002) ("[B]ecause of their very potency, inherent powers must be
exercised with restraint and caution.' Although a court retains
the inherent right to sanction when rules of court or statutes
also provide a vehicle for sanctioning misconduct, resort to

these inherent powers is not preferred when other remedies are available.") (citations and quotations omitted).

As the Third Circuit recognized in In re Prudential, "[i]t has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Id. at 188-89 (citing Fellheimer, Eichen & Braverman, P. C., v. Charter Techs., Inc., 57 F.3d 1215, 1224 (3d Cir. 1995)). Sanctions may be justified pursuant to these powers in

> cases where a party has acted in bad faith,
> vexatiously, wantonly, or for oppressive
> reasons . . . . The imposition of sanctions in this
> instance transcends a court's equitable power
> concerning relations between the parties and reaches a
> court's inherent power to police itself, thus serving
> the dual purpose of vindicating judicial authority
> without resort to the more drastic sanctions available
> for contempt of court and making the prevailing party
> whole for expenses caused by his opponent's
> obstinacy.'"

Id. (citations omitted). Further, "if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled," the court may assess attorneys' fees against the responsible parties. Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).

In exercising its discretion pursuant to its inherent powers, the Court is guided by the same considerations that control the imposition of sanctions under the Federal Rules of

Civil Procedure. See Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994). Thus, for the same reasons that Mr. Parrish's misconduct violates Rule 11, his actions in submitting an entirely unsupported motion based upon numerous misrepresentations and mischaracterizations constitute a fraud upon this Court deserving of sanctions pursuant to this Court's inherent powers. Those sanctions include an award of Defendants' attorneys' fees in the amount of $2,688.00.

**IV. CONCLUSION**

For these reasons, this Court hereby imposes sanctions upon Mr. Parrish pursuant to Rule 11(c) or, in the alternative, the Court's inherent authority. In addition, the Court awards to Defendants attorneys' fees in the amount of $2,688.00. Finally, because the Court granted Defendants' motion to dismiss as unopposed, and Plaintiff seeks an opportunity to oppose the motion - albeit belatedly - the Court will vacate its October 23 Order of dismissal and permit Plaintiff to file an opposition to the Defendants' motion to dismiss within thirty days of the date of this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE


Date: September 6, 2013